## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-20-00436-PRW |
| A & D BROWN ENTERPRISES, INC., et al., | ) ) | |
| Defendants. | ) | |

## <u>ORDER</u>

The Declaratory Judgment Act bestows on the district courts unique and substantial discretion in deciding whether to declare the rights of litigants in actions brought thereunder. Defendants Nick and Charla Shaffer, with their "Motion to Dismiss Plaintiff's Second Amended Complaint for Declaratory Judgment or, in the Alternative, Motion to Stay" (Dkt. 19), and Defendant Cheekia Rogers, with her "Motion to Dismiss Plaintiff's Second Amended Complaint for Declaratory Judgment or, in the Alternative, Motion to Stay" (Dkt. 30),[1] ask the Court to exercise its discretion to dismiss or stay this declaratory action. For the reasons that follow, the Court will grant their motions and dismiss the action without prejudice.

---

[1] Cited hereinafter as "Shaffer Mot. to Dismiss (Dkt. 19)" and "Rogers Mot. to Dismiss (Dkt. 30)," respectively.

*Background*

This litigation traces back to a tragic, fatal car accident. On January 15, 2020, H.S., a minor, went for a driving lesson with her instructor, George A. Voss of Brown's Driving School. At the conclusion of her lesson, the pair picked up A.R., another minor and student driver. At the direction of Voss, A.R. took the wheel with instructions to bring H.S. back to her home before continuing with her own driving lesson.

With A.R. at the wheel, Voss in the front passenger seat, and H.S. in the backseat, the trio headed westbound on I-240 before taking the 3B exit to S.E. 74th Street. According to Defendant Cheekia Rogers, A.R.'s parent and legal guardian, as they approached the end of the exit ramp, Voss instructed A.R. to bring the vehicle to a complete stop despite the absence of a stop or yield sign, and A.R. dutifully complied.

As she did so, Sammual Pace exited the ramp immediately behind them. While Pace saw the stopped vehicle and applied his brakes, it was too late: He slammed into the rear of the student-driven car. H.S., seated in the backseat of the vehicle, was killed.

For reasons that will be made clear, the precise sequence of the events that followed is critical to the disposition of these motions. On January 29, 2020, H.S.'s parents, Nick and Charla Shaffer ("the Shaffers"), sent a letter to Brown's Driving School's insurance carrier, State Farm Insurance Mutual Automobile Insurance Company ("State Farm"), notifying it of potential insurance claims arising from the accident and requesting copies of any relevant insurance policies.[2] Anticipating possible litigation, the Shaffers also sent

---

[2] *See* Jan. 29, 2020 Insurance Claim Letter (Dkt. 19, Ex. 2).

a spoliation and preservation of evidence letter to both State Farm and Brown's Driving School.[3]

Meanwhile, on March 6, 2020, the Shaffers sued Brown's Driving School, Sammual Pace, George Voss, and A.R. in the District Court of Oklahoma County,[4] asserting an assortment of state law tort claims.[5] At the initiation of that state action, State Farm had not yet responded to the Shaffer's request for copies of the relevant insurance policies.

Then, on March 13, 2020, State Farm produced a Confirmation of Coverage.[6] It disclosed that Brown's Driving School had one million dollars ($1,000,000.00) in liability coverage and one hundred thousand dollars ($100,000.00) per person, per incident, up to three hundred thousand dollars ($300,000.00) total per incident (i.e., regardless of the number of individuals involved in the incident), in uninsured/ underinsured ("UM") coverage for each of its twenty-five vehicles.[7] The Confirmation of Coverage did not contain the entirety of the insurance policy, however.

In response to the Confirmation of Coverage, the Shaffers demanded that State Farm pay them two and a half million dollars ($2,500,000.00).[8] In their view, the total amount available to satisfy their claim was the one hundred thousand dollars ($100,000.00) per

---

[3] *See* Feb. 14, 2020 Preservation of Evid. and Spoliation Letter (Dkt. 19, Ex. 3).

[4] *See* State Action Dkt. (Dkt. 19, Ex. 4) at 2.

[5] *See* Second Am. Pet. (Dkt. 19, Ex. 1) at 4–18.

[6] Confirmation of Coverage (Dkt. 19, Ex. 5).

[7] *See id.*

[8] *See* Mar. 23, 2020 Demand Letter (Dkt. 19, Ex. 6) at 2.

vehicle times the twenty-five vehicles covered by the policy (i.e., the per-vehicle limits "stack").[9] If not paid in full, the Shaffers continued, litigation would imminently follow.[10] They pointed to the state lawsuit against the other parties involved in the accident as if to say, "We will make good on our threat."[11]

On April 6, 2020, State Farm responded that it was evaluating the Shaffers' demand.[12] Then, four days later, on April 10, 2020, State Farm paid the Shaffers one hundred thousand dollars ($100,000.00) pursuant to the coverage for the vehicle that H.S. was in at the time of the accident.[13] State Farm neither provided an answer as to the balance of the amount demanded (i.e., whether the policies "stack") nor sent the complete insurance policy. However, State Farm did acknowledge the potentially forthcoming claims against it.[14]

The complete insurance policy wasn't conveyed until a month later, on May 11, 2020.[15] And the day after that, on May 12, 2020, State Farm told the Shaffers that the policy

---

[9] *See id.* at 7.

[10] *See, e.g.*, *id.* at 7 (demanding two and a half million dollars ($2,500,000.00) and musing that, "[g]iven the extreme nature of the facts in this case, State Farm Insurance would want to avoid any bad faith claim").

[11] *See id.* (observing that they had "filed a Petition against the Defendants and are currently negotiating with the at-fault carriers").

[12] *See* Apr. 6, 2020 Resp. Email (Dkt. 19, Ex. 7) (stating that they had "been retained by State Farm to assist them in responding to [the Shaffer's] current demand for payment").

[13] *See* Apr. 10, 2020 Letter (Dkt. 19, Ex. 8).

[14] *See id.* ("This payment is being made without prejudice to your clients pursuing any and all other causes of action they may have against State Farm . . . .").

[15] May 11, 2020 Email (Dkt. 19, Ex. 9) (attaching the insurance policy).

did not "stack" and that they therefore were not entitled to the two and a half million dollars ($2,500,000.00) demanded, only the one hundred thousand dollars ($100,000.00) it paid earlier.[16] State Farm then filed its Complaint for Declaratory Judgment (Dkt. 1) with this Court the very same day, asking for a declaratory judgment as to its legal obligations under the insurance policy.[17] Specifically, State Farms asks this Court to declare that:

(1) "[t]he [UM] coverage provided by the Policy may not be stacked . . . and therefore, the maximum limit of [UM] coverage available for the fatal injuries sustained [by] H.S. is the Each Person limits of $100,000.00,"

(2) "[t]he Policy does not provide coverage for punitive damages,"

(3) "[t]o the extent Underlying Plaintiffs seek to recover from Brown's Driving School for damages that do not constitute 'bodily injury' or 'property damage' caused by an 'accident' involving an insured vehicle, the Policy does not provide Liability Coverage for such damages," and

(4) "State Farm has no duty to satisfy any judgment entered in the Underlying Action to the extent that judgment is for damages that do not constitute 'bodily injury' or 'property damage' caused by an 'accident' involving an insured vehicle."[18]

On May 14, 2020, based on State Farm's denial of their demand, the Shaffers filed their Second Amended Complaint in the state action, adding State Farm as a defendant and alleging state law claims for breach of contract and related damages, including punitive damages.[19]

---

[16] *See* May 12, 2020 Denial Letter (Dkt. 19, Ex. 16) at 4.

[17] Pl.'s Compl. for Declaratory J. (Dkt. 1).

[18] *Id.* at 12.

[19] *See* Second Am. Compl. (Dkt. 19, Ex. 1).

A series of subsequent developments in the state action prompted State Farm to amend their complaint in this action. On June 15, 2020, A.R. filed a cross-claim against State Farm in the state action asserting, inter alia, bad faith and breach of contract claims.[20] Later that same day, State Farm amended its complaint in this action to add Voss as a defendant in light of his newly asserted insurance claim.[21] Then, about three weeks after A.R. filed her state court breach of contract and bad faith claims against State Farm, it amended its complaint in this case for the second time to add A.R. as a defendant.[22]

Now, the Shaffers, individually and as parents and next of friends of H.S., and Cheekia Rogers, as parent and legal guardian of A.R., move this Court to dismiss or, in the alternative, to stay the declaratory action in deference to the state action. They argue that that such a dismissal or stay is proper because there is a pending state court action between similar parties, presenting similar issues, all of which are governed by state law, and also because this declaratory action was filed in an effort to unfairly deprive the would-be plaintiffs of their forum of choice.[23] They point out that "since State Farm is a party in the state court case, it can have all of its relief requested and claims against it resolved" through that action, whereas the declaratory action "would not resolve all the claims against State Farm."[24] Indeed, the state action, they continue, can resolve *all* claims against *all* parties

---

[20] *See* Cross-cl. Of Sycheekia Rogers, as Parent and Legal Guardian of A.R., a Minor, Against Cross-cl. Defs. (Dkt. 19, Ex. 17).

[21] Pl.'s Am. Compl. for Declaratory J. (Dkt. 9).

[22] Pl.'s Second Am. Compl. for Declaratory J. (Dkt. 15).

[23] Shaffer Mot. to Dismiss (Dkt. 19) at 5; Rogers Mot. to Dismiss (Dkt. 30) at 5.

[24] Shaffer Mot. to Dismiss (Dkt. 19) at 6; Rogers Mot. to Dismiss (Dkt. 30) at 6.

to the accident.[25] In their view, State Farm is simply "attempting to recreate a lawsuit in the forum of its choice [to] rob the Shaffers and the other Defendants of their natural plaintiff right to litigate their claims in the state court case that was filed *before* the Declaratory Judgment."[26]

State Farm disagrees, of course. It believes this declaratory action "is the most efficient and expeditious route to resolution of the insurance coverage issues presented," and that a decision by this Court would not interfere with the state action.[27] It emphasizes that it brought the declaratory action before it was brought into the state action and stresses that the declaratory action presents only a narrow, legal question.[28] As such, it asks this Court to allow the declaratory action to proceed.

### *Legal Framework*

Typically, the "federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress."[29] But in the context of actions for declaratory relief brought pursuant to the Declaratory Judgment Act,[30] the federal courts

---

[25] Shaffer Mot. to Dismiss (Dkt. 19) at 6; Rogers Mot. to Dismiss (Dkt. 30) at 6.

[26] Shaffer Mot. to Dismiss (Dkt. 19) at 7; *see* Rogers Mot. to Dismiss (Dkt. 30) at 7.

[27] Pl.'s Resp. to Def., Cheekia Rogers, as Parent and Legal Guardian of A.R., a Minor's, Mot. to Dismiss Pl.'s Second Am. Compl. for Declaratory J. or, in the Alternative, Mot. to Stay (Dkt. 32) at 5–6.

[28] Pl.'s Resp. to Defs., Nick Shaffer and Charla Shaffer, Individually and as Parents and Next Friends of H.S., a Deceased Minor's, Mot. to Dismiss and/or Stay Pl.'s Second Am. Compl. for Declaratory J. (Dkt. 21) at 6–7, 21.

[29] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284, (1995) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817–18 (1976)).

[30] The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate

enjoy "unique and substantial discretion in deciding whether to declare the rights of litigants."[31]

To assist the district courts in determining whether to exercise their discretion to hear a particular action for declaratory judgment, the Tenth Circuit has identified some factors (known as the *Mhoon* factors) for the district court to consider:

(1) whether a declaratory action would settle the controversy;

(2) whether it would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*;

(4) whether use of declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.[32]

If, after considering the *Mhoon* factors, the district court determines in its sound discretion that it should entertain the declaratory judgment action, then that is the end of the inquiry for present purposes. But if the district court declines to exercise jurisdiction over a declaratory judgment action, there is another step: The district court must determine whether to stay the action or dismiss it and must state the reasons for that decision.[33] To

---

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

[31] *Wilton*, 515 U.S. at 286.

[32] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

[33] A district court's failure to provide reasons for its decision to stay or dismiss a declaratory judgment action is cause for remand on appeal. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1192 (10th Cir. 2002) ("The district court dismissed the United States' suit without providing reasons for its choice of remedy. Without reasons 'appellate review is

that end, "the district court considers such questions as whether the state proceedings will *likely* adjudicate the claims of the federal parties and whether the federal proceeding will serve any useful purpose considering the *likely* scope of the state proceeding."[34] As the emphasis on "likely" suggests, this "analysis involves some measure of prognostication."[35]

### Discussion

I.     Whether to Exercise Jurisdiction: The *Mhoon* Factors

     a.  *First and Second Mhoon Factors: Settling the Controversy & Clarifying the Legal Relations*

The first two *Mhoon* factors are (1) "whether a declaratory action would settle the controversy" and (2) "whether it would serve a useful purpose in clarifying the legal relations at issue."[36] These factors are "designed to shed light on the overall question of whether the controversy would be better settled in state court."[37]

As to the first factor, the state action can resolve all claims and defenses, tort and contract alike, between all parties arising from the car accident, whereas the federal declaratory action would resolve only a narrow, antecedent question to the current and prospective breach of contract claims, namely the scope of the contractual coverage.

---

impossible,' and the appropriate procedure is to remand for further findings and determinations by the district court." (citing *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1459 (10th Cir. 1995))).

[34] *Id.* (emphasis in original)

[35] *City of Las Cruces*, 289 F.3d at 1192.

[36] *Mhoon*, 31 F.3d at 983 (citation omitted).

[37] *City of Las Cruces*, 289 F.3d at 1187.

But, State Farm argues, the relevant "controversy" for purposes of this first factor is the narrow controversy as to the scope of coverage, which, it continues, would be fully resolved by the declaratory action. It cites *United Specialty Ins. Co. v. Connor Roofing & Guttering, LLC*[38] in support.

In *Connor Roofing*, Chief Judge Eagan did indeed conclude that the declaratory action in that case would "fully resolve the issue of insurance coverage between United and Conner Roofing" and found that to be "the relevant 'controversy' for the purpose of ruling on [the] motion to dismiss."[39] But she also found as relevant to that inquiry that "the state court lawsuit w[ould] not resolve the insurance coverage issue" and that, "[i]n any event, [the declaratory judgment plaintiff was not named] as a party in the state court lawsuit and . . . ha[d] no opportunity to raise th[e] issue in state court."[40] Of course, that is not the case here. State Farm *is* a party to the underlying state action and *has* raised its defenses there.[41]

In fact, the state action will necessarily or, at the very least, likely resolve all issues presented in the declaratory action. The state court must necessarily resolve whether the

---

[38] 2012 WL 208104 (N.D. Okla. Jan. 24, 2012).

[39] *Id.* at *4.

[40] *Id.*

[41] This broader conception of "controversy," predicated on the degree of identity of the parties and claims between the state and federal actions, is widespread in this circuit. *See, e.g.*, *Bristol W. Ins. Co. v. Salas*, 469 F. Supp. 3d 1175, 1177 (D. N.M. 2020) (the first two *Mhoon* factors "focus on the degree of identity between the parties and issues in the state and federal suits" and that "[t]he relevant inquiry . . . is whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceedings"); *Prime Ins. Co. v. GKD Mgmt. LP*, 2020 WL 7698789, at *3 (D. Utah Dec. 28, 2020) (same).

coverage "stacks" and whether punitive damages are available in a breach of contract claim to adjudicate the breach of contract claim. As for the other declarative relief, State Farm has asserted the affirmative defense[42] that "Plaintiffs' claims against [it] are not covered and are expressly excluded by the terms and conditions of the applicable insurance policy," raising the issue of whether it may be liable for damages that do not constitute "bodily injury" or "property damage" caused by an "accident" involving an insured vehicle.[43] The declaratory action, then, in all likelihood resolves nothing that will not be resolved in the state action. For this reason, the second factor, concerning whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue, tips in favor of declining jurisdiction as well.

> b.   *Third* Mhoon *Factor: Procedural Fencing*

The third *Mhoon* factor concerns whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to provide an arena for a race to *res judicata*. The anticipatory timing and defensive nature of a declaratory action are telltale signs of procedural fencing,[44] and this case is a paradigmatic example. As recounted earlier,

---

[42] The Court takes judicial notice of State Farm's Answer to Plaintiffs' Second Amended Petition in the underlying state action. *See St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[43] State Farm Mutual Automobile Insurance Company's Answer to Pls.' Second Am. Pet. at 14, *Shaffer v. Pace*, No. CJ-2020-1338 (Okla. Cty. Dist. Ct. filed Nov. 13, 2020).

[44] *See Neverve, LLC v. SE Prop. Holdings, LLC*, 2019 WL 3022200, at *4 (W.D. Okla. July 10, 2019) ("The timing and defensive nature of this suit epitomize procedural fencing.").

before they filed the state action, the Shaffers alerted State Farm to their potential insurance claims and sent a preservation of evidence and spoliation letter—clear indications of their litigious intent. And if the imminent possibility of litigation were not abundantly clear at that point, in the lead up to the declaratory action, the Shaffers demanded two and a half million dollars ($2,500,000.00) from State Farm and made clear that if their demand went unmet, litigation would ensue. In fact, they even pointed to the pending state action against the others connected to the car accident to substantiate their threat. Nevertheless, knowing that the Shaffers would bring it into the state action the moment it denied their demand, State Farm opted to simultaneously deny the demand and file their declaratory action. In so doing, State Farm was able to file its suit here, in the forum of its choosing, before providing the Shaffers with the requisite breach necessary for them to state a claim for breach of contract in the state action.

In short, this case is a clear example of procedural fencing: State Farm brought its federal declaratory action here, in its forum of choice, in anticipation of an imminent state court action against it concerning the same subject matter. Accordingly, the third *Mhoon* factor weighs in favor of declining jurisdiction over this declaratory action.[45]

---

[45] The Tenth Circuit has affirmed a district court's refusal to exercise jurisdiction over a declaratory action in similar circumstances. In *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995), defendant informed plaintiff, his insurance company, prior to filing suit that if plaintiff would not assume his defense in a liability claim, he would file suit for bad faith and breach of contract by a certain date. *See id.* at 1167. One day before this deadline, plaintiff filed suit for declaratory judgment. *See id.* Defendant filed his own suit the next day as promised. *See id.* The district court held these circumstances constitute procedural fencing by plaintiff and in its discretion dismissed the action. *See id.* at 1169. The Tenth Circuit affirmed this ruling, explaining that plaintiff's use of a declaratory

c.  *Fourth and Fifth* Mhoon *Factors: Friction between State and Federal Courts and Improperly Encroaching Upon State Jurisdiction & Better or More Effective Alternative Remedy*

The fourth *Mhoon* factor directs the Court to consider whether exercising jurisdiction in this matter would cause unnecessary entanglement and friction between the state and federal courts.[46] The Court finds that this declaratory action invites just such entanglement and friction. In effect, State Farm asks this Court to determine questions of state law for a state court that would have necessarily made those determinations itself but for the intervention of the federal court.

As to the fifth factor, the Court finds that the state action provides the best remedy. As discussed earlier, the state action will provide a comprehensive and efficient resolution to all claims arising from the car accident and is better suited to decide the questions of state law at issue. And while State Farm complains that it will be dragged through a wide-ranging litigation involving a plethora of fact-intensive tort claims, if it wants to opt out of that potentially protracted and costly litigation, and its legal arguments are sound, it can move to have the claims against it dismissed for failure to state a claim as a matter of law.

For these reasons, the fourth and fifth *Mhoon* factors weigh in favor of declining jurisdiction over the declaratory action as well.

---

judgment action as procedural fencing is an "adequate reason for the district court to refuse jurisdiction...." *Id.* at 1170.

[46] *See Runyon*, 53 F.3d at 1169.

d.  *The* Mhoon *Factors Weigh in Favor of Declining Jurisdiction*

In sum, all five *Mhoon* factors point in favor of declining jurisdiction over this declaratory action. Accordingly, the Court will exercise its discretion to decline jurisdiction.

II.      The Proper Remedy: to Dismiss or to Stay

Having decided to decline jurisdiction over this declaratory action, the Court must next determine whether to stay the action or dismiss it. To that end, the Court "considers such questions as whether the state proceedings will *likely* adjudicate the claims of the federal parties and whether the federal proceeding will serve any useful purpose considering the *likely* scope of the state proceeding."[47] In other words, the functional question is whether the district court anticipates a later need to resolve a dispute raised by the declaratory action.

All aspects of coverage for which declarative relief is sought are before the state court in the state action. The state court must resolve whether the coverage "stacks" and whether punitive damages are available in a breach of contract claim to adjudicate the breach of contract claim. State Farm has also asserted as an affirmative defense that "Plaintiffs' claims against [it] are not covered and are expressly excluded by the terms and conditions of the applicable insurance policy," raising the issue of whether it may be liable for damages that do not constitute "bodily injury" or "property damage" caused by an "accident" involving an insured vehicle. There is no reason, then, to stay this action in

---

[47] *City of Las Cruces*, 289 F.3d at 1192 (emphasis in original).

anticipation of a need to resolve these issues down the road. As such, dismissal without prejudice, as opposed to a stay, is proper.

*Conclusion*

The Court has broad discretion to hear cases brought pursuant to the Declaratory Judgment Act. In this case, a declaratory action is of little benefit in light of the parallel state action between the same parties, raising the same (and additional) claims and defenses. Simply put, the state action provides a more comprehensive and efficient resolution to the controversy and is better suited to decide the questions of state law at issue. Moreover, the declaratory action was clearly brought to deprive the natural plaintiffs of the opportunity to select their forum. Accordingly, the Court exercises its sound discretion to decline jurisdiction over this declaratory action.

Defendants Nick and Charla Shaffer's Motion to Dismiss or, in the Alternative, to Stay the Second Amended Complaint (Dkt. 19) and Defendant Cheekia Rogers's Motion to Dismiss or, in the Alternative, to Stay the Second Amended Complaint (Dkt. 30) are hereby **GRANTED** and the case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 3rd day of February 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE